I

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

**Richard W. Comerford**
   Plaintiff,

Vs.

**Rick A. Schweigert**
   Defendant,

**Civil Action No.**

05CA 1 1 3 9 9 MLW

## **COMPLAINT**

### I.    INTRODUCTION

The Defendant, an employee of the Army Board for Correction of Military Records

("ABCMR"), has written to plaintiff's Member of Congress and indicated that plaintiff

had purportedly been medically returned to duty and that he was purportedly discharged

from Active Guard and Reserve ("AGR") [1] duty in 1994 and that plaintiff's discharge

certificate separating him from AGR duty was purportedly mailed to him. However

neither the ABCMR nor the Veterans Administration ("VA") nor plaintiff have any

record of plaintiff either being discharged from AGR duty or being medically returned to

duty. Plaintiff has made numerous lawful requests pursuant to the Freedom if Information

Act ("FOIA") to the defendant for a copy of his purported DD Form 214 and the medical

order returning him to duty. The defendant has not responded in violation of said statute.

### II. JURISDICTION

This court possesses subject matter jurisdiction to entertain the Freedom of Information and Privacy Acts (5 USC 552/5 USC 552a) of the United States Code.

## III. PARTIES

1. Plaintiff is a United States citizen who resides at 9 Speedwell Lane, Plymouth, Massachusetts.

2. Rick A. Schweigert is the Chief, Congressional and Special Actions of the Army Review Boards Agency located at 1901 South Bell Street 2nd Floor, Arlington, Virginia 22202-4508. One of the Agency's Boards is the Army Board for Correction of Military Records ("ABCMR"). The ABCMR is empowered pursuant to 10 USC 1552 to accept applications from soldiers for the correction of their military records and to make recommendations to the Secretary of the Army ("Secretary") for correction of same.

## IV. VENUE

Venue is properly in this court by virtue of plaintiff's residence in the District of Massachusetts.

## V. FACTS

1.  I, Richard W. Comerford, the plaintiff pro se, state under the penalty of perjury as
    attested by my signature below that the following facts are true also that the
    attached exhibits are true copies to the best of my knowledge and memory as of
    the date of said signature.

2.  Plaintiff qualified for retirement from military active duty pursuant to 10 USC
    3911 on or about October 1992.

3.  Plaintiff was injured in the line of duty rescuing a comrade on or about August
    1993 while serving on Active Guard and Reserve ("AGR") duty pursuant to 32
    USC 502 (f) as Commandant of a Recondo School in the Massachusetts National
    Guard ("Guard").

4.  Plaintiff was certified as "incapacitated" by his commander on or around July
    1994. *See Exhibit "A"*.

5.  The U.S. Army Inspector General ("IG") in a report dated 7 February 1996 found:
    a) Plaintiff had been injured in the line of duty while serving on active duty in
    August 1993; b) Plaintiff's superiors had improperly denied plaintiff's entitled
    active duty medical care in violation of Army Regulations; c) Plaintiff's superiors
    had improperly stopped plaintiff's entitled active duty pay in violation of Army
    Regulations; d) Plaintiff's superiors had improperly conducted the line of duty
    investigation into plaintiff's injury and had failed to report that plaintiff had been
    injured in the line of duty while serving on active duty. *See Exhibit "B"*.

6.  On or around 11 April 1997 the Guard Staff Judge Advocate ("SJA") wrote to the
    Guard Personnel director and stated that he and the Guard State Surgeon had
    found: a) Plaintiff had been injured in the line of duty; b) Plaintiff should be

referred to a medical evaluation board with a probable follow on referral to a physical evaluation board. *See Exhibit "C".*

7. On or around 25 April 1997 a Guard medical duty review Board ("MDRB") found: a) Plaintiff had been injured in the line of duty in August 1993; b) Plaintiff had not been medically fit for duty since May 1994; c) Plaintiff was not presently medically fit for continued service; d) Plaintiff's case should be referred to Army medical and physical evaluation boards ("MEB/PEB") for medical retirement. *See Exhibit "D".*

8. Pursuant to an arbitration agreement plaintiff applied for "relief" to the ABCMR in 1999. *See C.A. No 99-11712-WGY.*

9. The ABCMR did not accept plaintiff's 1999 application.

10. Pursuant to a Court Order the ABCMR accepted plaintiff's application in 2000. *See C.A. No 00-11671-WGY.*

11. On or around the ABCMR recommended that plaintiff's AGR service be recognized and credited to his service record. *See Exhibit "F".*

12. The ABCMR did not recommend that plaintiff be discharged from AGR duty. *See Exhibit "F".*

13. However the U.S. Army did not credit plaintiff for his AGR service on his service record and it neither resumed paying plaintiff for his AGR service nor would it discharge plaintiff from AGR duty.

14. Plaintiff's Members of Congress have made repeated inquiries to the Army and the ABCMR on this matter.

15. Attorney Eric S. Maxwell submitted an application to the ABCMR on this matter in 2002.

16. The ABCMR did not accept Attorney's Maxwell application.

17. Instead the defendant wrote to plaintiff's Members of Congress and indicated that purportedly: a) The ABCMR cannot offer "relief" to plaintiff; b) The ABCMR did recognize that plaintiff had served on AGR duty; c) The ABCMR had corrected his service record to reflect his AGR service; d) The ABCMR also recommended that plaintiff be discharged from AGR duty; e) The Secretary of the Army ("Secretary") had ordered that plaintiff be discharged from AGR duty; f) Plaintiff's discharge certificate (DD Form 214) separating him from AGR duty has been mailed to him; g) The ABCMR's case on plaintiff is closed.

18. Neither plaintiff nor his Members of Congress have received a copy of his purported discharge certificate from AGR duty nor a copy of his purported service record corrected to show that he had served on AGR duty.

19. Plaintiff made a request pursuant to FOIA through his Member of Congress requesting a copy of the ABCMR record of his case. The ABCMR sent a copy of its record on plaintiff's case to him.

20. The ABCMR record of plaintiff's case shows: a) The ABCMR did not recommend that plaintiff be discharged from AGR duty; b) The Secretary did not order that plaintiff be discharged from AGR duty; c) A DD Form 214 discharging plaintiff from AGR duty does not exist in the record; d) Plaintiff's service record has not been corrected to show that he served on AGR duty. *See Exhibit "F"*.

*21.* Plaintiff has made several lawful requests though his Members of Congress to the
defendant and the Secretary for a copy of his purported DD Form 214 discharging
plaintiff from AGR duty.

*22.* Neither the defendant nor the Secretary has deigned to respond to plaintiff's
lawful requests.

*23.* On or around May 2005 plaintiff reached 30-years active duty military service. In
response to inquiries made by his Members of Congress two branches (U.S. Army
Reserve and National Guard Bureau) of the U.S. Department of Defense have
recently contacted plaintiff and stated that he has not been discharged from AGR
duty and that he remains on AGR duty until he is discharged. (Note: Pursuant to
statute - 10 USC 1168 [Exhibit "G"] and regulation - 32 CFR 45 (Exhibit "H") a soldier cannot be
separated from active or AGR duty until his discharge certificate [DD Form 214] is "physically
delivered" to him at the separation point on the effective date of discharge; or in the event of an
"emergency" the DD Form 214 can be mailed to him on the effective date of discharge. Pursuant
to the aforementioned statue and regulation a copy of the DD Form 214 must also be provided to
the VA. As of March 2000 the VA had no record of plaintiff being discharged from AGR duty
[Exhibit "E"].

*24.* However because of the defendant's insistence that the Secretary has purportedly
already ordered that plaintiff be discharged from AGR duty and that the DD Form
214 separating plaintiff from AGR duty has already been purportedly mailed to
him the Department of Defense can neither pay plaintiff his entitled active duty
medical care, nor provide him with entitled active duty medical care for his 1993
injured in the line of duty; nor discharge him from AGR duty so that plaintiff can
collect military retirement, VA and civilian employment benefits.

## VI Prayer for Relief

WHEREFORE, plaintiff respectfully requests that this Honorable Court

(1) Enter an order directing the defendant Mr. Schweigert to either:

(a) Provide plaintiff with a copy of the following purported documents:

- The ABCMR recommendation to the Secretary that plaintiff was discharged from AGR duty.

- The Secretary's order separating plaintiff from AGR duty.

- The DD Form 214 separating plaintiff from AGR duty

- Plaintiff's service record showing that plaintiff served on and was discharged from AGR duty.

(b) Or, in the alternative, provide his affidavit to this Court stating that:

- The ABCMR did not recommend to the Secretary that plaintiff was discharged from AGR duty.

- The Secretary did not order that plaintiff be separated from AGR duty.

- The purported DD Form 214 separating plaintiff from AGR duty does not exist.

- Plaintiff's service record showing that plaintiff served on and was discharged from AGR duty does not exist.

(2) Enter a declarative judgment, if the defendant cannot provide the above cited

documents, that the defendant acted improperly, unethically and unlawfully in stating

that plaintiff had been discharged from AGR duty.

(3) Enter a judgment against the defendant for plaintiff's costs plus reasonable pro se

fees.

(4) Grant such other and further relief, as it deems just and meet.


Plaintiff respectfully requests trial by jury.


Respectfully submitted this 23rd day of June 2005 AD,

Richard W. Comerford Pro See
9 Speedwell Lane
Plymouth, Massachusetts 02360
(508) 833-9396

### Exhibits

1. "A": Commanders Certification of Incapacitation
2. "B": IG Report (Redacted) 7 February 1996
3. "C": Murray Memo 11 April 1997
4. "D": MAAR-PER-SG Memo 25 April 1997
5. "E": VA "HINQ" 17 March 2000
6. "F": ABCMR Recommendation November 2001
7. "G": 10 USC 1168
8. "H": 32 CFR 45

### Notes

[1] AGR duty is performed pursuant to 32 USC 502 (f) and AR 135-381 for the purposes of proving training, recruiting, administrative and instruction support to the Guard and Reserve. Officers on AGR duty serve initially for a three year period and then for an "indefinite" thereafter until they have reached 20 years and one month service of combined active and AGR service at which time they are evaluated for retention or retirement from active duty pursuant to 10 USC 3911.

## COMMANDER'S CERTIFICATION

1. I certify that the injury or disease of <u>RICHARD W. COMERFORD, MAJ</u> <u>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,</u> Massachusetts Army National Guard, has incapacitated the member from performing the normally assigned duties of <u>54A00,</u> during the period from <u>23 July 1994</u> to <u>31 December 1994.</u>

2. <u>MAJ Comerford</u> has not attended training.

3. <u>MAJ Comerford</u> is unemployed for this period per his statement attached and has earned no income from any source.

MICHAEL P. CLOONAN
MAJ, FA, MassARNG
Commanding

Exhibit "B"

# REPORT OF INQUIRY

Executive Summary

7 February 1996

Subject: Inspector General Action Request (Comerford, R/dih95-0941)

Background: Kathleen McGowan, Attorney at Law, wrote a letter, dated 14 AUG 95 to the Department of the Army Inspector Generals Office (DAIG) on behalf of her client MAJ Richard W. Comerford. MAJ Comerford is a member of HQ STARC Massachusetts Army National Guard (MAARNG). DAIG forwarded the letter to the National Guard Bureau Inspector Generals Office on 22 AUG 95, who then forwarded it to the MAARNG Inspector Generals Office on 29 AUG 95 to conduct an inquiry or investigation into the matters presented. Basic correspondence at Enclosure 1.

1. Substantiated Allegation: MAJ Richard Comerford was improperly released from active duty status prior to final medical determination returning him to normal military duties in violation of AR 135-381 and NGR (AR) 135-381.

SYNOPSIS: MAJ Comerford was injured on 15 AUG 95 while on active duty (AD) over 30 days. He received medical care which continued until surgery was performed on 21 - 25 SEP 93. MAJ Comerford was on AD orders from 29 MAR 93 to 15 SEP 93. These orders were amended to 30 SEP 93. Subsequently he was on AD orders 1 - 31 OCT 93, 1-30 NOV 93 and 1-31 DEC 93. MAJ Comerford attempted to obtain follow-up medical care on 22 OCT 93, complaining of symptoms related to his surgery. No follow up care was arranged and as of 31 DEC 93 he was released fro AD status (over 30 days). He was placed on AD orders on a weekly basis to provide support to Massachusetts Military Academy. The chain of command did not provide follow up with medical care as requested by medical personnel. MAJ Comerford did not receive a final medical determination prior to release from AD tour in excess of 30 days. MAJ Comerford was not provided the opportunity to remain on Active Duty by extending his orders beyond the current expiration date or to be released from AD and continue to receive AD pay and allowances provided he was declared incapable of performing his "normal military duties" by military medical authority per AR 135-381 para 4-21. His removal from active duty prior to final medical determination contributed to the problems encountered by MAJ Comerford to obtain follow up medical care.

FOR OFFICIAL USE ONLY. DISSEMINATION IS PROHIBITED EXCEPT AS AUTHORIZED BY AR 20-1 PARA 1 - 30.

THIS DOCUMENT CONTAINS INFORMATION EXEMPT FROM MANDATORY DISCLOSURE UNDER THE FOIA EXEMPTION NO. 6 APPLIES.

2. Substantiated Allegation: MAJ Richard Comerford did not receive proper or adequate follow-up medical care in violation of AR 40-3 and AR 135-381.

Synopsis: Surgery was performed on MAJ Comerford on 21 - 25 SEP 93 for a hiatal hernia. Three weeks after surgery (22 OCT 93) MAJ Comerford reported to medical personnel at the USCG Clinic at Cp Edwards MA, complaining of a recurrence of symptoms. He was referred, for follow up care, to Dr Gilbert of St Elizabeth's Hospital in Boston, who had been treating MAJ Comerford. No action was taken by the chain of command to provide follow up medical care at either St Elizabeth's Hospital or the nearest MTF. It was not until almost six months later after a second (4 MAR 94) and third (31 MAR 94) visit to the USCG Clinic and written communications from MAJ Comerford to his supervisor LTC Bailey, Massachusetts Military Academy Deputy Commandant complaining of his condition, concern with his health and that he was 16 weeks overdue at the hospital that action was taken to send MAJ Comerford to Walter Reed Army Medical Center (WRAMC) for medical treatment. It should be noted that remarks made in the LOD investigation dated 5 JAN 94 include the referral from the USCG Clinic dated 22 OCT 93 for additional follow-up treatment. The referral is included as an exhibit to the LOD.

The first visit to WRAMC was not until 24 MAY 94 which was seven months after medical personnel first referred MAJ Comerford for follow up treatment and continuity of care due to recurrence of symptoms. This appointment was arranged by the Military Personnel Office of the MAARNG per a request submitted on 12 APR 94.

3. Substantiated Allegation: That a Line of duty Investigation (LOD) regarding MAJ Comerford's injury contained errors and was not submitted in a timely manner in violation of AR 600-8-1.

Synopsis: MAJ Comerford was injured on 15 AUG 93 and DD 2173 statement of medical examination and duty status was completed on 6 SEP 93. It was noted on the DD 2173 that a formal LOD was required by State Hq's, MAARNG. An investigating officer was appointed on 25 OCT 93 with a suspense date of 7 DEC 93. The DD 261 report of investigation; Line of Duty and Misconduct Status was completed by the investigating officer on 5 JAN 94, signed by appointing authority on 23 JAN 94, signed by reviewing authority on 27 JAN 94 and signed and returned by NGB as approved LOD on 14 FEB 94.

FOR OFFICIAL USE ONLY,
DISSEMINATION IS PROHIBITED EXCEPT
AS AUTHORIZED BY AR 20-1 PARAT - 30.

THIS DOCUMENT CONTAINS INFORMATION
EXEMPT FROM MANDATORY DISCLOSURE
UNDER THE FOIA EXEMPTION NO. 6 APPLIES.

Total time from incident to final approval was 183 days. Table 40-2, AR 600-8-1, states completion time is 75 days after incident. No comments on why the investigation was late were made in the remarks section of DD 261 as required by para 41-4, AR 600-8-1. The DD 261 did contain an administrative error. Block 3 listed the duty status as "d., short tour of active duty for training" but should have been "b., called or ordered to active duty for more than 30 days."

4. Substantiated Allegation: That MAJ Comerford was improperly denied Incapacitation Pay for the period 1 JAN 95 - NOV 95.

Synopsis: MAJ Comerford was approved for and received Incapacitation Pay from 22 JUL 94 to 31 DEC 94. This was the result of a second LOD which was initiated based on MAJ Comerford being evacuated to a local hospital on 15 JUL 94 while on AD orders (less than 30 days). The request for additional Incapacitation Pay for JAN - NOV 95 was approved in OCT 95 by the State HQ's review board. The request was submitted to NGB who in turn denied the request based on the LOD dated 16 AUG 94 which had a finding of approved in line of duty, EPTS aggravation. A review of this LOD revealed that the incident for which MAJ Comerford was evacuated on 15 JUL 94 was a severe recurrence of the very symptoms for which he had been attempting to receive medical treatment since OCT 93. This finding was appealed to NGB with evidence indicating that MAJ Comerford's continuing medical problems are the result of the approved line of duty injury sustained on 15 AUG 93. On 18 DEC 95 NGB decided to relate everything to the hiatal hernia line of duty dtd 14 FEB 94. The Incap Pay request was reviewed by the NGB and subsequently approved Incap Pay for the period from JAN 95 to APR 96.

FOR OFFICIAL USE ONLY. DISSEMINATION IS PROHIBITED EXCEPT AS AUTHORIZED BY AR 20-1 PARA 4 - 30.

THIS DOCUMENT CONTAINS INFORMATION EXEMPT FROM MANDATORY DISCLOSURE UNDER THE FOIA EXEMPTION NO. 8 APPLIES

Exhibit 'C'

# M E M O R A N D U M

**DATE:**     April 11, 1997

**TO:**     COL SANFASON

**FROM:**     LTC MURRAY

**RE:**     MAJ R. COMERFORD

**CC:**

COL:  I have reviewed the medical file of MAJ Comerford with the State Surgeon.  COL Zimmelman indicated to me that MAJ Comerford's unfitness for retention is a result of a medical condition originally found to be on the line of duty.  It is therefore my opinion,based upon the applicable AR, that MAJ Comerford should be referred to an MEB with probable follow-on referral to a PEB.

As you know, Mr. Raymond is aware of this process and should be advised to proceed accordingly.  The HQ Detachment should also be notified that this action is taking place so that it can coordinate with Mr. Raymond for proper notification to MAJ Comerford.

Please contact me if you have any questions.

Enclosure 5
Exhibit "D"

**FILE COPY**

**THE COMMONWEALTH OF MASSACHUSETTS**
HEALTH SERVICES DIVISION
**THE ADJUTANT GENERAL'S OFFICE**
CAMP CURTIS GUILD
HAVERHILL STREET, READING, MA 01867-1999

reply refer to:
MAAR-PER-SG

25 April 1997

MEMORANDUM FOR COMMANDER, Walter Reed Army Medical Center, Director
Patient Administrator, ATTN: Physical Evaluation Board Liaison
Officer, Washington D.C. 20307-5001.

SUBJECT: Request Physician referral to an Medical Evaluation Board.

1 Reference: AR 40-501, Chapter 3, Paragraph 3-5 g.

2. In accordance with the above cited reference it is requested a MEB Narrative Summary be
initiated on the following named soldier:

   a COMERFORD, Richard W
   b. MAJ/04
   c. 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
   d. Diseased in line of duty during Annual Training 32 USC 503 15 August 1993 Hiatal Hernia

3 MAJ Comerford has been treated at Walter Reed AMC since May 1994 and has not been in a
duty status since.

4 MAJ Comerford's case was refereed to the Massachusetts Army National Guard Medical Duty
Review Board who recommended to the State Surgeon that this soldier is not medically fit for
continued service.

5 After a review with Massachusetts Army National Guard Surgeon a Judge Advocate legal
opinion was that MAJ Comerford's medical condition is a result of a disease originally found to be
in the line of duty. It is therefore requested MAJ Comerford be referred to an MEB with probable
follow-on referral to a PEB.

6 Your assistance in resolving this matter is greatly appreciated.

7 Point of contact is CW4 Raymond, DSN 220-2280, Commercial (617) 944-0500 X2280; FAX
DSN 220-2109

MailMan message for SURETTE,BARBARA  MAS ADMITTING SUPERVISOR
Printed at BOSTON.VA.GOV  27 Mar 00 09:43
Subj: HINQ response for  /requested by SURETTE,BARBARA  [#24736061] 17 Mar 00 14:46  28 lines
From: POSTMASTER  In 'IN' basket.   Page 1
-----------------------------------------------------------------------------
    .S Response only - No C&P Record Found

    VBA name = COMERFORD, RICHARD WILLIAM        Verified Svc-Data
          Sex = MALE
Date of Birth = NOV 01, 1952
    Claim Number = 037367062
    Service Number = 037367062
   Folder Location = 376 - VA RECORDS MNGMNT CNTR (RMC)
   Total Active Svc = 9 yr 4 mo 6 days
INDICATORS( Active Duty Training NO   Disability NO    Homeless Veteran NO )

 Service data            C&P          BIRLS
-------------------------------------------------------------
 Branch of Service =              UNK
            EOD =                MAY 26,1975
            RAD =                OCT 1,1984

   Char of Service =             HON
DISABILITIES( Combined % = 0   SC/Total = 0/0   Additional = 0 )


          Diagnostic Verified Indicator is NO.
       Verify Service Connections at 376 - VA RECORDS MNGMNT CNTR (RMC)

ABCMR Proceedings (cont)                                        AR2000043997

13. The Board notes here the applicant has 19 years, 4 months and 6 days of qualifying service for retired pay at age 60, and that he needs only 8 more qualifying months to reach the required 20 years. He may perform further Reserve service for credit and he has had ample opportunity for this purpose. This must be accomplished before his mandatory removal date. It is also noted that he may also qualify for retired pay if found unfit to perform military duties based on medical disability under the TERA. This is an additional reason for completing a medical evaluation. He is otherwise not entitled to early retirement.

14. The applicant's contentions concerning unlawful actions and activities of the MAARNG have been noted. However, this Board is not an investigative body. It decides cases and recommends correction of military records based on the evidence of record. It does not have jurisdiction over MAARNG and State activities and does not report an individual's status to the U.S. Congress, and will not further address these contentions.

15. The applicant's comments concerning the CID may be made directly with that office as provided for by pertinent regulations. Until he has done so, he has not exhausted his administrative remedy for this issue.

16. In view of the foregoing, the applicant's records should be corrected as recommended below.

RECOMMENDATION:

1. That all of the Department of the Army records related to this case be corrected by referral of the individual concerned to a military medical facility for a medical examination for determination of his fitness for duty as prescribed by the Office of the Command Surgeon, Army Reserve Personnel Command.

2. That if he is found not medically qualified for retention based on service connected illness/injury, he be referred to an MEB/PEB for appropriate further evaluation and medical disability processing.

3. That if found medically qualified, or if a disqualifying condition is determined not to be service connected, and he is not referred to an MEB, he be so notified, and further advised that he may request a Non-Duty Related PEB for a fitness ruling only, as prescribed by pertinent regulations.

4. That his active duty service statuses with the MAARNG from 1987 to1994 be shown as AGR, creditable as active Federal service.

Exhibit "6"

LII

> > > > § 1168

## § 1168. Discharge or release from active duty: limitations

*Release date: 2004-03-18*

*Search this title:*

**(a)** A member of an armed force may not be discharged or released from active duty until his discharge certificate or certificate of release from active duty, respectively, and his final pay or a substantial part of that pay, are ready for delivery to him or his next of kin or legal representative.

**(b)** This section does not prevent the immediate transfer of a member to a facility of the Department of Veterans Affairs for necessary hospital care.

Search Title 10

*LII has no control over and does not endorse any external Internet site that contains links to or references LII.*

$Exhibit$ "$M$"

[Code of Federal Regulations]
[Title 32, Volume 1]
[Revised as of July 1, 2004]
From the U.S. Government Printing Office via GPO Access
[CITE: **32CFR45.3**]

[Page 291-295]

TITLE 32--NATIONAL DEFENSE

CHAPTER I--OFFICE OF THE SECRETARY OF DEFENSE

PART 45_CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY (**DD**
FORM **214**/5 SERIES)--Table of Contents

Sec. 45.3  Policy and procedures.

(a) Administrative issuance or reissuance of **DD** Forms **214** and 215.
(1) The **DD** Form **214** will normally be issued by the command from
which the member was separated. In those instances where a **DD** Form **214**
was not issued, the Services concerned may establish procedures for
administrative issuance.
(2) The **DD** Form **214**, once issued, will not be reissued except:
(i) When directed by appropriate appellate authority, Executive
Order, or by the Secretary concerned.
(ii) When it is determined by the Service concerned that the
original **DD** Form **214** cannot be properly corrected by issuance of a **DD**
Form 215 or if the correction would require issuance of more than two **DD**
Forms 215.
(iii) When two **DD** Forms 215 have been issued and an additional
correction is required.
(**3**) Whenever a **DD** Form **214** is administratively issued or reissued,
an appropriate entry stating that fact and the date of such action will
be made in Block 18, Remarks, of the **DD** Form **214** unless the appellate
authority, Executive Order, or Secretarial directive specifies
otherwise.
(b) The Military Services will ensure that every member (except as
limited in paragraph (b)(2) of this section and excluding those listed
in paragraph (c) of this section) being separated from the Military
Services is given a completed **DD** Form **214** describing relevant data
regarding the member's service, and the circumstances of termination. **DD**
Form **214** may also be issued under other circumstances prescribed by the
Military Service concerned. A continuation sheet, if required, will be
bond paper, and will reference: The **DD** Form **214** being continued;
information from blocks 1 through 4; the appropriate block(s) being
continued; the member's signature, date; and the authorizing official's
signature. **DD** Forms **214** are not intended to have any legal effect on
termination of the member's service.
(1) Release or discharge from active service. (i) The original of **DD**
Form **214** showing separation from a period of active service with a
Military Service, including release from a status that is legally
determined to be void, will be physically delivered to the separate
prior to departure from the separation activity on the effective date of
separation; or on the date authorized travel time commences.
(A) Copy No. 4, containing the statutory or regulatory authority,
reentry code, SPD code, and narrative reason

[[Page 292]]

for separation also will be physically delivered to the separatee prior

to departure, if he/she so requested by initiating Block 30, Member Requests Copy 4.

(B) Remaining copies of **DD** Form **214** will be distributed on the day following the effective date of separation.

(ii) When separation is effected under emergency conditions which preclude physical delivery, or when the recipient departs in advance of normal departure time (e.g., on leave in conjunction with retirement; or at home awaiting separation for disability), the original **DD** Form **214** will be mailed to the recipient on the effective date of separation.

(iii) If the separation activity is unable to complete all items on the **DD** Form **214**, the form will be prepared as completely as possible and delivered to the separatee. The separatee will be advised that a **DD** Form 215 will be issued by the Military Service concerned when the missing information becomes available; and that it will not be necessary for the separatee to request a **DD** Form 215 for such information.

(iv) If an optical character recognition format is utilized by a Military Service, the first carbon copy of the document will be physically delivered or mailed to the separatee as prescribed in paragraphs (b) (i) through (iii) of this section.

(2) Release from active duty for training, full-time training duty, or active duty for special work. Personnel being separated from a period of active duty for training, full-time training duty, or active duty for special work will be furnished a **DD** Form **214** when they have served 90 days or more, or when required by the Secretary concerned for shorter periods. Personnel shall be furnished a **DD** Form **214** upon separation for cause or for physical disability regardless of the length of time served on active duty.

**(3)** Continuing on active duty. Members who change their status or component, as outlined below, while they are serving on active duty will be provided a completed **DD** form **214** upon:

(i) Discharge for immediate enlistment or reenlistment (optional--at the discretion of the Military Services). However, Military Services not providing the **DD** Form **214** will furnish the member a **DD** Form 256, ``Honorable Discharge Certificate,'' and will issue instructions requiring those military offices which maintain a member's records to provide necessary Service data to the member for application to appropriate civilian individuals, groups, and governmental agencies. Such data will include Service component, entry data and grades.

(ii) Termination of enlisted status to accept an appointment to warrant or commissioned officer grade.

(iii) Termination of a temporary appointment to accept a permanent warrant or commission in the Regular or Reserve components of the Armed Forces.

(iv) Termination of an officer appointment in one of the Military Services to accept appointment in another Service.

(c) **DD** Form **214** need not be prepared for: (1) Personnel found disqualified upon reporting for active duty and who do not enter actively upon duties in accordance with orders.

(2) Personnel whose active duty, active duty for training, full-time training duty or active duty for special work is terminated by death.

**(3)** Personnel being removed from the Temporary Disability Retired List.

(4) Enlisted personnel receiving temporary appointments to warrant or commissioned officer grades.

(5) Personnel whose temporary warrant or commissioned officer status is terminated and who remain on active duty to complete an enlistment.

(6) Personnel who terminate their Reserve component status to integrate into a Regular component.

(7) Personnel separated or discharged who have been furnished a prior edition of this form, unless that form is in need of reissuance

for some other reason.

(d) Preparation. The Military Departments will issue instructions governing the preparation of **DD** Form **214**, consistent with the following:

(1) **DD** Form **214** is an important record of service which must be prepared accurately and completely. Any unavoidable corrections and changes made in the unshaded areas of the form

[[Page 293]]

during preparation shall be neat, legible and initialed on all copies by the authenticating official. The recipient will be informed that making any unauthorized change or alteration of the form will render it void.

(2) Since **DD** Form **214** is often used by civilian personnel, abbreviations should be avoided.

(3) Copies of **DD** Form **214** transmitted to various governmental agencies shall be legible, especially those provided to the Veterans Administration (Department of Veterans Affairs, effective March 15, 1989, in accordance with section 18(a), Public Law 100-527 and the Department of Labor).

(4) The authority for a member's transfer or discharge will be cited by reference to the appropriate Military Service regulation, instruction, or manual, followed by the appropriate separation program designator on copies 2, 4, 7, and 8 only. A narrative description to identify the reason for transfer or separation will not be used on copy 1.

(5) To assist the former Service member in employment placement and job counseling, formal inservice training courses successfully completed during the period covered by the form will be listed in Block 14, Military Education; e.g., medical, dental, electronics, supply, administration, personnel or heavy equipment operations. Training courses for combat skills will not be listed. See 1978 Guide to the Evaluation of Educational Experiences in the Armed Services for commonly accepted course titles and abbreviations.

(6) For the purpose of reemployment rights (DoD Directive 1205.12) \1\) all extensions of service, except those under 10 U.S.C. 972, are considered to be at the request and for the convenience of the Government. In these cases, Block 18 of **DD** Form **214** will be annotated to indicate ``Extension of service was at the request and for the convenience of the Government.''
-----------------------------------------------------------------------

\1\ Copies may be obtained if needed, from the U.S. Naval Publications and forms Center, Attn: Code 1062, 5801 Tabor Avenue, Philadelphia, PA.
-----------------------------------------------------------------------

(7) When one or more of the data items on the **DD** Form **214** are not available and the document is issued to the separatee, the applicable block(s) will be annotated ``See Remarks.'' In such cases, Block 18 will contain the entry ``**DD** Form 215 will be issued to provide missing information.'' When appropriate, Block 18 will also reflect the amount of disability pay, and the inclusive dates of any nonpay/excess leave days.

(8) The authorizing official (E-7, GS-7 or above) will sign the original in ink ensuring that the signature is legible on all carbon copies. If not, a second signature may be necessary on a subsequent carbon copy. The authorized official shall be an E-7, GS-7, or higher grade, except that the Service concerned may authorize chiefs of installation separation activities (E-5, GS-5, or above) to serve in this capacity if designated in writing by the responsible commander and/

or director (0-4, or above).

(9) The following are the only authorized entries in Block 24, Character of Service, as appropriate: ``Honorable,'' ``Under Honorable Conditions (General),'' ``Under Other Than Honorable Conditions,'' ``Bad Conduct,'' ``Dishonorable,'' or ``Uncharacterized.'' When a discharge has been upgraded, the DD Form 214 will be annotated on copies 2 through 8 in Block 18 to indicate the character of service has been upgraded; the date the application for upgrade was made; and the effective date of the corrective action.

(10) The date entered in Block 12.a. shall be the date of enlistment for the earliest period of continuous active service for which a DD Form 214 was not previously issued. For members who have previously reenlisted without being issued a DD Form 214, and who are being separated with any discharge characterization except ``Honorable,'' the following statement shall appear as the first entry in Block 18., ``Remarks,'' on the DD Form 214: ``CONTINUOUS HONORABLE ACTIVE SERVICE FROM (applicable date) UNTIL (applicable date).'' The ``from'' date shall be the date of initial entry into active duty, or the first day of service for which a DD Form 214 was not previously issued, as applicable; the ``until'' date shall be the date before commencement of the current enlistment.

[[Page 294]]

(11) For Service members retiring from active duty enter in Block 18., ``Subject to active duty recall by Service Secretary.''

(12) For Service members being transferred to the Individual Ready Reserve, enter in Block 18., ``Subject to active duty recall and/or annual screening.''

(e) Distribution. The Military Services will prescribe procedures governing the distribution of copies of the DD Forms 214 and 215, consistent with their internal requirements, and the following:

(1) DD Form 214--(i) Copy No. 1 (original). To the member.

(ii) Copy No. 2. To be used as the Military Services' record copy.

(iii) Copy No. 3. To the Veterans Administration (Department of Veterans Affairs, effective March 15, 1989, in accordance with section 18(a), Data Processing Center (214), 1614 E. Woodword Street, Austin, Texas 78772. A reproduced copy will also be provided to the hospital with the medical records if the individual is transferred to a VA hospital. If the individual completes VA Form 21-5267, ``Veterans Application for Compensation or Pension,'' include a copy of the DD Form 214 with medical records forwarded to the VA regional office having jurisdiction over the member's permanent address. When an individual is in Service and enlisting or reenlisting in an active duty status or otherwise continuing on active duty in another status, copy No. 3 will not be forwarded to the VA.

(iv) Copy No. 4. To the member, if the member so requested by having initialed Block 30. If the member does not request this copy, it may be retained in the master military personnel record, to be available in case the member requests a copy later.

(v) Copy No. 5. To Louisiana UCX/UCFE, Claims Control Center, Louisiana Department of Labor, P.O. Box 94246, Capitol Station, Baton Rouge, Louisiana 70804-9246.

(vi) Copy No. 6. To the appropriate State Director of Veterans Affairs (see enclosure 4), if the member so requested by having checked ``Yes'' in Block 20, ``Member Requests Copy Be Sent to Director of Veterans Affairs.'' The member must specify the State. If the member does not request the copy be mailed, it may be utilized as prescribed by the Military Service concerned.

(vii) Copies No. 7 and 8. To be distributed in accordance with

regulations issued by the Military Service concerned.
      (viii) Additional Copy Requirements. Discharged Alien Deserters.
Provide one reproduced copy of Copy No. 1 to the U.S. Department of
State, Visa Office--SCA/VO, State Annex No. 2, Washington, DC 20520, to
assist the Visa Office in precluding the unwarranted issuance of visas
to discharged and alien deserters in accordance with DoD Directive
1325.2 \2\. Place of birth will be entered in Block 18.
------------------------------------------------------------------------

      \2\ See footnote 1 to Sec. 545.3(d)(6).
------------------------------------------------------------------------


      (2) DD Form 214-ws. Utilized to facilitate the preparation of DD
Form 214. The document will be used and disposed of in accordance with
regulations issued by the Military Service concerned.
      (3) DD Form 215. Utilized to correct errors in DD Form 214
discovered after the original has been delivered and/or distribution of
copies of the form has been made, and to furnish to separatee
information not available when the DD Form 214 was prepared. The
distribution of DD Form 215 will be identical to the distribution of DD
Form 214.
      (4) Requests for Copies of DD Form 214 Subsequent to Separation.
Agencies maintaining a separatee's DD Form 214 will provide a copy only
upon written request by the member. Agencies will provide the member
with 1 copy with the Special Additional Information section, and 1 copy
with that information deleted. In the case of DD Form 214 issued prior
to July 1, 1979, agencies will provide the member with 1 copy containing
all items of information completed, and 1 copy with the following items
deleted from the form: Specific authority and narrative reason for
separation, reenlistment eligibility code, and separation program
designator/number.
      (i) In those cases where the member has supplied an authorization to
provide a copy of the DD Form 214 to another individual or group, the
copy furnished will not contain the Special Additional Information
section or, in the

[[Page 295]]

case of DD forms issued prior to July 1, 1979, those items listed in
paragraph (e)(4) of this section.
      (ii) A copy will be provided to authorized personnel for official
purposes only.
      (f) Procurement. Arrangements for procurement of DD Forms 214, 214-
ws, and 215 will be made by the Military Services.
      (g) Modification of Forms. The modification of the content or format
of DD Forms 214, 214-ws, and 215 may not be accomplished without prior
authorization of the Assistant Secretary of Defense (Force Management
and Personnel) (ASD(FM&P)). Requests to add or delete information will
be coordinated with the other Military Services in writing, prior to
submission to the ASD(FM&P). If a Military Service uses computer
capability to generate forms, the items of information may be arranged,
the size of the information blocks may be increased or decreased, and
copies 7 and/or 8 may be deleted at the discretion of the Service.